IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action Number 3:07CR157 |
| THOMAS CHAD TURNER, | |
| Defendant. | |

### **MEMORANDUM OPINION**

This matter is before the Court on the defendant's motion to suppress.  For the reasons stated herein, the motion to suppress will be denied in part and granted in part.

### I. FACTS

On February 28, 2007, law enforcement executed a search warrant at the home of the defendant, Thomas Chad Turner ("Turner" or "defendant").  The search resulted in law enforcement finding more than 100 growing marijuana plants, marijuana-growing equipment, and a handgun.  The defendant was not at home when the warrant was executed but he answered a call to his cell phone from DEA Narcotics Task Force officer, Phillip Johnakin ("Johnakin"). Johnakin told Turner that he would like to speak with Turner.  Turner agreed, and they discussed where to meet.  Turner selected the approximate time and the place of the meeting – in front of his mother's business.  When Turner arrived, there were two unmarked police cars in the parking lot.  Turner went to Johnakin's car, asked if he was the one that wanted to talk to him, and got into the passenger seat of the car.  Johnakin advised Turner of the nature of the investigation, the search of his residence, and the items recovered from his home, and told Turner that he was not

in custody and that they did not have a warrant for his arrest. Johnakin asked Turner if he would answer some questions but did not give Turner a *Miranda* warning. Turner agreed to answer some questions and made some incriminating statements about his use, cultivation and distribution of marijuana. He admitted that the plants and equipment were his, that the gun was in his possession, and that he smoked marijuana regularly. He stated that he had been growing marijuana for over a year, that the gun actually belonged to his brother, and that he only used it to scare some fighting dogs. When the questioning turned to Turner's customers, Turner terminated the conversation. At this point, Johnakin exited his car, got handcuffs from the trunk, and took the defendant into custody. Turner was permitted to telephone his mother to let her know what was happening. There was also conversation between Johnakin and Turner en route to the Richmond DEA Office. Another officer, a local deputy who the defendant knew, was also in the car during the trip to Richmond.

Turner was ultimately charged with conspiracy to manufacture marijuana plants in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846; manufacture of marijuana plants in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B); and possession of a firearm by a user of controlled substances, in violation of Title 18, United States Code, Section 922(g)(3). There is also a forfeiture notice for a Glock 21 semi-automatic handgun, and the sum of at least $500,000.

## II. ANALYSIS

Custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 364 U.S. 436, 444 (1966). The determination of whether

a defendant is in custody is "objective" and focuses on "how a reasonable man in the suspect's position would have understood his situation." *Davis v. Allsbrooks,* 778 F.2d 168, 171 (4th Cir.1985) (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984)). It is the "compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted" that implicates *Miranda. Beckwith v. United States,* 425 U.S. 341, 346 (1976) (internal quotations and citations omitted). As such, a custodial interrogation does not result merely because the "individual is the 'focus' of an investigation," or because the questioning takes place at a police station. *United States v. Jones,* 818 F.2d 1119, 1123 (4th Cir.1987) (internal citations omitted). The recent Fourth Circuit case of *United States v. Uzenski,* 434 F.3d 690, 704 (4th Cir. 2006), reconfirms this analysis.

The issue in this case is whether Turner was in custody when he was questioned by Johnakin. The defendant was contacted by Johnakin, and the defendant agreed to meet Johnakin at his mother's shop. He could have declined but he did not. Once he arrived at the agreed-upon location, Turner voluntarily got into Johnakin's car. Johnakin told the defendant that they did not have a warrant for his arrest. Turner was not placed in handcuffs and was not ordered to remain in the car. There was no show of force. Turner agreed to answer questions and did so, until the questioning turned to his customers. Generally, a person who voluntarily accompanies the police to a location for questioning is not in custody. *See Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000) (holding that defendant was not in custody for purposes of *Miranda* where he went to the police station voluntarily); *see also Oregon v. Mathiason,* 429 U.S. 492, 495 (1977) ( *per curiam*).

The defense argues that the fact that the defendant was placed in handcuffs and taken into

custody after he refused to answer any more questions indicates that he was in custody while being questioned.  The defense argues that the police did not consider this to be a voluntary encounter – because once Turner refused to answer, he was handcuffed and taken to the Richmond DEA office.

The Court disagrees.  The fact that the defendant was placed in handcuffs and taken into custody after refusing to answer specific questions is not the determinative of custody.  If it were, the police could manipulate each situation to make sure that a defendant was found not to be in custody by not placing him under arrest immediately after questioning.  The test is how a reasonable man in the suspect's position would have understood his situation.  *Berkemer*, 468 U.S. at 442.  Given the circumstances of this case, a reasonable man in the defendant's position would not have believed himself to be in custody.

For these reasons, the Court finds that the defendant was not in custody during the initial phase of the questioning.  Statements made during this phase of questioning will not be suppressed.  However, once the defendant was handcuffed and placed back into the car to be driven to Richmond, he was in custody.  Any statements made after he was handcuffed will be suppressed.

An appropriate Order shall issue.


June 29, 2007                                    /s/
DATE                              RICHARD L. WILLIAMS
                                  SENIOR UNITED STATES DISTRICT JUDGE